MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 61
Docket:         SRP-25-288
Argued:         April 7, 2026
Decided:        July 14, 2026

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

JOSEPH M. MURRAY

MEAD, J.

[¶1]  Joseph M. Murray appeals from a judgment of conviction of unlawful sexual contact and two counts of visual sexual aggression against a child entered by the trial court (Cumberland County, *Cashman, J.*) following his plea of guilty.  Murray argues that the sentencing court (1) erred in not considering his intellectual functioning to any degree, and that its failure to do so violated the Eighth Amendment of the Constitution of the United States and article one, section nine of the Maine Constitution; (2) improperly double-counted his grooming of the victims; (3) abused its discretion by considering his prior sexual victimization as an aggravating factor; and (4) imposed a disproportionate sentence.  We affirm the sentence.

## I.  BACKGROUND AND PROCEDURAL HISTORY

[¶2]  The following facts are drawn from the procedural record and the sentencing court's oral findings.  *See State v. Goncalves*, 2025 ME 70, ¶ 2, 340 A.3d 639.

[¶3]  On July 27, 2023, the State filed a complaint against Murray alleging three crimes based on conduct that occurred between January 1, 2018, and July 3, 2023.  Murray was charged by indictment on December 8, 2023, with the same three crimes: unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2026) (Count 1) and two counts of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B) (2026) (Counts 2 and 3).  On October 28, 2024, the trial court held a Rule 11 hearing, *see* M.R.U. Crim. P. 11, and Murray entered guilty pleas to all three counts.  On May 7, 2025, the court conducted a sentencing hearing and imposed concurrent sentences of five years' imprisonment on the two charges of visual sexual aggression and a consecutive sentence of eight years' imprisonment, with all but two years suspended, and twelve years of probation on the charge of unlawful sexual contact.  *See* 17-A M.R.S. § 1602 (2025).[1]

---

[1] Since the imposition of Murray's sentence, 17-A M.R.S. § 1602(1)(B) has been amended.  *See* P.L. 2025, ch. 402, § 1 (effective Sep. 24, 2025) (codified at 17-A M.R.S. § 1602(1)(B) (2026)); P.L. 2025, ch. 420, § 1 (effective Sep. 24, 2025) (codified at 17-A M.R.S. § 1602(1)(B)).

[¶4] The victims were, at all relevant times, under the age of twelve. The relationship between the family and Murray was close, and the victims referred to Murray as "Uncle Joe."

[¶5] In July 2023, the victims' mother found the victims engaged in a "urination act," after which the victims disclosed that Murray had been engaging in certain acts with them, noted below, since they were as young as three. Murray pressured the victims into performing these acts by continually asking them to do "the thing." He told the victims that the acts were a secret and encouraged the victims to not disclose the acts to their parents. The acts occurred multiple times over a four-year span during which Murray groomed the victims and otherwise attempted to normalize his aberrant behavior.

[¶6] Murray "would expose himself to the [victims]. And while he was exposed, he would ask the [victims] to either urinate over him into a diaper he was holding or he would urinate on them. And in either instance, it involved masturbation." In another instance, Murray walked into the bathroom while the older victim was showering, exposed himself, and masturbated. Murray also touched the younger victim's genitals and clitoris, referring to it as "the

4

ticklish spot,"[2] and the older victim touched Murray's genitals on at least one occasion.

[¶7]  The court determined that the basic sentences on Counts 2 and 3 were the statutory maximum of five years and that the basic sentence on Count 1 was between seven and eight years.  After the court weighed the aggravating and mitigating factors, it concluded that the maximum sentences for Counts 2 and 3 remained at five years and that the maximum sentence for Count 1 was eight years.  The court imposed concurrent unsuspended sentences of five years' imprisonment on Counts 2 and 3.  On Count 1, the court imposed a sentence, consecutive to the sentence on Counts 2 and 3, of eight years' imprisonment, with all but two years suspended, and twelve years of probation, to "maximize both the gravity of the offense and . . . appropriately match[] the conduct while at the same time providing for services and supervision of Mr. Murray . . . because . . . supervision will help . . . make sure this conduct does not happen again."

[¶8]  Murray filed an application to allow an appeal of sentence, *see* 15 M.R.S. § 2151 (2026), and the Sentence Review Panel granted the

---

[2]  This conduct involving physical contact between Murray and the younger victim formed the basis for Count 1.

application, *State v. Murray*, No. SRP-25-288 (Me. Sent. Rev. Panel Aug. 28, 2025).

## II.  DISCUSSION

### A.    Consideration of Sentencing Factors

#### 1.    Consideration of Intellectual Functioning in Sentencing

##### a.    Constitutional Argument

[¶9]  Murray argues that the sentencing court erred in failing to consider his "intellectual disabilities" as a mitigating factor when imposing his sentence. Murray alleges that he has a functional IQ of 77, placing him on "a borderline intellectual function[ing] level," but concedes that he does not qualify as having a clinical intellectual disability, which would require an IQ between 50 and 69.[3] *See* Nat'l Acads. of Scis., Eng'g & Med., *Mental Disorders and Disabilities Among Low-Income Children* 171 tbl.9-1 (Thomas F. Boat & Joel T. Wu eds., 2015).  He argues that both the Eighth Amendment to the United States Constitution and article one, section nine, of the Maine Constitution require a court to consider a defendant's intellectual disabilities as inherently mitigating.  He also contends that *State v. Goncalves*, 2025 ME 70, ¶ 40, 340 A.3d 639, supports the idea that

---

[3]  The State agrees that Murray does not suffer from a clinical intellectual disability.

a permanent mental condition, as compared to a "transient emotional state," is inherently mitigating.

[¶10] We review an argument under the Eighth Amendment de novo if it is preserved because such an argument goes to the legality of sentence. *Id.* ¶ 32. At the sentencing hearing, Murray argued only that individuals like him, with lower intellectual functioning, are likely to be victimized in prison, not that his intellectual functioning is inherently mitigating to his culpability. Because Murray referenced neither the Eighth Amendment nor article one, section nine of the Maine Constitution, Murray's constitutional arguments are not preserved and we review for obvious error. *See id.*

[¶11] Maine Rule of Unified Criminal Procedure 52(b) provides that errors that are "obvious" or that "affect[] substantial rights" may be "noticed" even if they were not brought to the attention of the trial court. To constitute obvious error, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

[¶12]   The United States Supreme Court has stated, in the context of capital cases, that those with intellectual disabilities are "categorically less culpable than the average criminal," *Atkins v. Virginia*, 536 U.S. 304, 316 (2002), and that an intellectual disability is "inherently mitigating," *Tennard v. Dretke*, 542 U.S. 274, 287 (2004).   Outside of capital cases, however, the Court has explicitly stated that "legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury" and that "the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Lockett v. Ohio*, 438 U.S. 586, 603, 605, (1978).   We have never held that an individual's lower intellectual functioning inherently mitigates their culpability. *See State v. Koehler*, 2012 ME 93, ¶ 35, 46 A.3d 1134 ("[I]n examining aggravating and mitigating factors, a court *may* also consider the following: whether a defendant has an antisocial, hostile, unstable, or psychopathic character; [and] the defendant's age, *intelligence*, and prior criminal history . . . ."  (emphasis added and citations omitted)).

[¶13]   Murray cites to *State v. Goncalves* as support for the proposition that his intellectual functioning, as a "permanent condition," is inherently mitigating.   *See* 2025 ME 70, ¶ 40, 2340 A.3d 639.   In that case, when considering whether "blind rage" was an inherently mitigating factor, we stated

that blind rage is "a transient phenomenon and not the kind of permanent condition—such as cognitive, intellectual or developmental impairment or disability—that the Supreme Court has held is inherently mitigating, *at least in capital cases.*" *Id.* (emphasis added). Murray's intellectual functioning, which we note does not meet the definition of even a mild intellectual disability, is simply not the kind of "permanent condition" that was envisioned in *Goncalves* as being inherently mitigating. Plainly, we find no constitutional mandate, under either the federal or the state constitution, that the court must have found Murray's intellectual functioning to be inherently mitigating. There was no error, much less obvious error, nor any infringements of constitutional rights, in the court's declining to find Murray's intellectual functioning to be inherently mitigating.

### b.    Alternative Argument

[¶14]    Murray argues, separate and apart from his constitutional arguments noted above, and pointing to our decisions in *State v. Lovejoy*, 2024 ME 42, ¶ 27, 315 A.3d 744; *State v. Carrillo*, 2021 ME 18, ¶ 45, 248 A.3d 193; *State v. DeWalt*, 684 A.2d 1291, 1293 (Me. 1996); and *State v. Michaud*, 590 A.2d 538, 544 (Me. 1991), that the court abused its discretion in failing to consider his mental limitations as a material sentencing factor.

[¶15]  Because this argument relates to the propriety of the sentence, and not its legality, "[w]e review the trial court's application of aggravating and mitigating factors in determining the maximum sentence for abuse of discretion." *State v. Gaston*, 2021 ME 25, ¶ 36, 250 A.3d 137.

[¶16]  While the cited cases feature sentencing courts considering defendants' intellectual functioning as potentially mitigating factors, we have previously held that a sentencing court's failure to acknowledge a defendant's poor physical health at sentencing is not an abuse of discretion.  *See State v. Shulikov*, 1998 ME 111, ¶ 27, 712 A.2d 504 (holding that although the sentencing court was aware of the defendant's health problems and "had the authority to take [the defendant's] health into account, it was not required to do so, and its implicit rejection of [the defendant's] bad health as a mitigating factor was within its discretion." (citation omitted)).

[¶17]  Here, while the sentencing court did not address Murray's intellectual functioning at all, it could have found, and we infer that it did find, that Murray's level of intellectual functioning was either irrelevant or not particularly compelling as a mitigating factor, given, as the court noted, the "planful and carefully executed conduct" that Murray took to keep his abuse of the victims hidden.  Although Murray's intellectual functioning is not in the

upper tiers of intellectual functioning, he had enough intelligence and capacity to effectively and successfully groom the victims and keep his actions secret, which itself indicates that Murray is sufficiently intelligent to understand that his conduct was both wrong and criminal. Given the court's findings of Murray's careful planning and execution of these crimes, and the steps he took to keep them hidden, we discern no abuse of discretion in the court's failure to expressly include Murray's intellectual functioning as a factor in its sentencing analysis.

### 2. Double-Counting

[¶18] Murray contends that the court erred because it included his grooming of the victims at both step one and step two in its sentencing analysis. He argues that grooming is "inherently subjective" and thus could be considered only at step two.

[¶19] We review a claim of double-counting de novo if it is preserved, because it is a challenge to the legality of the sentence, *State v. Ellis*, 2025 ME 56, ¶ 16, 339 A.3d 794, but because Murray did not raise this issue below, we review for obvious error, *Goncalves*, 2025 ME 70, ¶ 32, 340 A.3d 639.[4]

---

[4] We recognize the unique challenge facing counsel to identify, object, and preserve arguments regarding double counting and proportionality of sentences during the actual sentencing proceedings. Those issues often may not be patently apparent until after a thorough review of the record by trial or appellate counsel. Nonetheless, in order to give the trial court the opportunity to

[¶20]  At step one of the sentencing analysis, "the court shall determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the individual."  17-A M.R.S. § 1602(1)(A).  At step two, "the court shall determine the maximum term of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to the case."  *Id.* § 1602(1)(B).  "Although a factor must be considered only once and at the proper step in the analysis, the same *fact* can generate multiple *factors*."  *Ellis*, 2025 ME 56, ¶ 18, 339 A.3d 794 (quotation marks omitted).  A sentencing court may refer to the same facts at different steps of the sentencing analysis provided it does so for different reasons.  *Lovejoy*, 2024 ME 42, ¶ 25, 315 A.3d 744.

---

correct any missteps, counsel must be vigilant in monitoring the court's adherence to sentencing protocols and promptly objecting in real time as appropriate.

We note that the Sixth and Eleventh Circuit Courts of Appeals have specifically mandated a final opportunity for counsel to object to sentencing irregularities after the trial court has pronounced sentence.  *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) ("[W]e exercise our supervisory powers over the district courts and announce a new procedural rule, requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised."); *United States v. Campbell*, 473 F.3d 1345, 1347 (11th Cir. 2007) ("[A]fter imposing a sentence, the district court must give the parties an opportunity to object to the court's ultimate findings of fact, conclusions of law, and the manner in which the sentence is pronounced, and must elicit a full articulation of the grounds upon which any objection is based.").  While stopping short of mandating such a judicial practice, we nevertheless recognize it as beneficial for both counsel and judges.

[¶21]  Contrary to Murray's contention, the court did not double-count Murray's grooming of the victims.  We have never held that grooming is inherently subjective and may be considered only at step two of a court's sentencing analysis.  *See State v. Pfeil*, 1998 ME 245, ¶¶ 15-18, 720 A.2d 573 (affirming a sentence where grooming behavior was considered at step one for the seriousness of the offense and at step two for its impact on the victim).  At step one, the court appropriately considered grooming in determining the seriousness of the conduct, indicating that Murray's grooming behavior was a part of his larger efforts to keep this conduct secret for many years.  Because Murray's grooming and trust building prolonged the conduct by convincing the victims to remain silent, the court properly considered it at step one for the seriousness of the offense.

[¶22]  At step two, the court explicitly considered the subjective impact that Murray's grooming had on the victims and their family, stating:

> The subjective impact of these . . . acts . . . between [the victims] and [Murray] has had a significant impact . . . .  The behaviors that they were exposed to not only impacted them at the time that it happened, when it was ongoing, but will also likely to impact them with this learned behavior for some period of time . . . .  There's also the subjective impact that this conduct has had on [the victims'] parents, who let [Murray] into their home and into their family and trusted him.  And trust within all members of this family, nuclear family unit, has been impacted. . . . And there's a subjective impact of grooming on these two [victims]. . . . I also find . . . the [victims]

> have taken this learned behavior and replicated it when [Murray] is not there. And that is a long-standing subjective impact that will be with these [victims] for some period of time.

Because the court's statements demonstrate that it considered the *impact* of the conduct on the victims and the family, not the acts themselves, it was an appropriate consideration at step two. *See* 17-A M.R.S. § 1602(1)(B). Given that the court very clearly considered the grooming behavior for different purposes at each step of the analysis, we conclude that there was no double-counting and thus no error, let alone obvious error. *See Pfeil*, 1998 ME 245, ¶¶ 15-18, 720 A.2d 573; *Lovejoy*, 2024 ME 42, ¶ 27, 315 A.3d 744 (holding that no double-counting occurred where the court considered the defendant's mental state at steps one and two for different purposes); *State v. Schlosser*, 2025 ME 76, ¶ 46, 345 A.3d 25 (holding that no double-counting occurred where the sentencing court considered a fact at step one for the scope of the drug trafficking and considered the same fact at step two for the defendant's personal role in the trafficking).

### 3. Consideration of Prior Abuse

[¶23] Murray stated during the sentencing hearing that he had suffered sexual abuse when he was ten years old and now argues that the court

14

considered the past sexual abuse he suffered as an aggravating factor, rather than as a mitigating factor, and that the court abused its discretion in doing so.

[¶24]   Because Murray's argument challenges the propriety of the sentence, "[w]e review the trial court's application of aggravating and mitigating factors in determining the maximum sentence for abuse of discretion." *Gaston*, 2021 ME 25, ¶ 36, 250 A.3d 137.

[¶25]   In considering the past sexual abuse that Murray suffered, the court stated during its discussion of mitigating factors:

> And while there are certainly some factors [being a victim of sexual abuse] that *could* be considered mitigating with respect to that reality, the Court also finds that to be a factor that *could* be considered in aggravation.   Namely, Mr. Murray understands, firsthand, how this type of behavior and exposure at a young age can have a significant impact on a young person.

(Emphasis added).   Immediately afterwards, the court stated, "There are factors that I *do* consider in aggravation as well," before it discussed what it considered to be aggravating factors.  (Emphasis added).

[¶26]   Although the court clearly considered Murray's argument regarding the past abuse, the court stopped short of making a finding of prior sexual abuse as either an aggravating or a mitigating factor.  The court's use of the word "could" illustrates that the mitigating and aggravating aspects of the abuse were either in equipoise in the court's thinking or, if the abuse was to be

considered as a factor that was either an aggravating or mitigating one, it did not significantly affect the analysis. Further, despite suggesting that being a victim of sexual abuse conceivably could be an aggravating factor, the court's statements immediately thereafter created a clear line of demarcation between its consideration of the mitigating factors and its consideration of the aggravating factors that it actually did find to be present in this case, and Murray's sexual victimization was not amongst either of them.

[¶27] We discern no abuse of discretion in the sentencing court's declining to include Murray's prior sexual victimization as a mitigating factor. *See State v. Watson*, 2024 ME 24, ¶ 22, 319 A.3d 430 ("[T]he trial court is generally afforded significant leeway in determining which factors are considered and the weight a factor is assigned." (quotation marks omitted)).

**B.    Proportionality of Sentence**

[¶28] Murray argues that his ultimate sentence of seven years' imprisonment with twelve years' probation is disproportionate because the court did not provide enough justification for setting the basic sentences on Counts 2 and 3 at the statutory maximum, did not articulate where the unlawful sexual contact charge fell on the continuum of seriousness, and did not refer to

any sentences for comparable crimes in reaching its decision.[5] He maintains that the court failed to conduct a separate sentencing analysis for each count and failed to adequately explain why it was imposing consecutive sentences.

[¶29] Murray's arguments that the court did not provide sufficient justification for setting the basic sentences at the statutory maximum or articulate the seriousness of the unlawful sexual contact charge are immaterial to his argument that his ultimate sentence is disproportionate, and we do not address them further. *See State v. Hoover*, 2017 ME 158, ¶ 25, 169 A.3d 904 ("In evaluating [the defendant's] constitutional proportionality claim, neither the general propriety of the sentence, evaluated according to the so-called *Hewey* analysis, nor [the defendant's] lack of a serious criminal record or other individual factors, have any significance in determining whether his punishment is disproportionate and thus unconstitutional." (footnote omitted)); *State v. Gilman*, 2010 ME 35, ¶ 21, 993 A.2d 14 (holding that article I, section 9 of the Maine Constitution "does not require consideration of the individual circumstances of each offender"). Murray's argument on the court's imposition of consecutive sentences is likewise immaterial to a constitutional

---

[5] We have already foreclosed this argument in *State v. Freeman*, and we do not address it further. *See* 2014 ME 35, ¶ 15, 87 A.3d 719 ("Although it is permissible, and often helpful, for the sentencing court to consider sentences imposed for comparable crimes in determining the basic period of incarceration, neither the sentencing statute nor our precedent requires that it do so.").

proportionality analysis, and we do not address it further. *See State v. Ward*, 2011 ME 74, ¶ 22, 21 A.3d 1033 (holding that, because "a defendant does not have a constitutional right to serve concurrent sentences for multiple violent offenses," any "constitutional argument concerning the legality of his sentences is limited to a determination of whether each sentence individually is cruel or unusual" (footnote and quotation marks omitted)).

[¶30]  Because a proportionality challenge implicates the legality of the sentence, we review de novo whether a sentence is proportionate. *State v. Scott*, 2019 ME 105, ¶ 50, 211 A.3d 205.  However, because Murray did not raise this argument below, we again review for obvious error. *See Goncalves*, 2025 ME 70, ¶ 32, 340 A.3d 639.

[¶31]  The Maine Constitution provides that "all penalties and punishments shall be proportioned to the offense."  Me. Const. art. I, § 9.  We have established a test for determining whether a sentence is violative of article one, section nine. *State v. Stanislaw* (*Stanislaw II*), 2013 ME 43, ¶ 29, 65 A.3d 1242.

[¶32]  First, we "see whether a particular sentence is greatly disproportionate to the offense for which it is imposed." *State v. Lopez*, 2018 ME 59, ¶ 15, 184 A.3d 880 (quotation marks omitted).  If the sentence is not

18

greatly disproportionate, we scrutinize "whether it offends prevailing notions of decency."[6]  *Id*. (quotation marks omitted).  A sentence that fails either prong of this test is unconstitutional.  *Id.*

[¶33]  In determining whether the sentence is disproportionate, we "begin by comparing the gravity of the offense and the severity of the sentence." *Id.* ¶ 16 (quotation marks omitted).  "Factors affecting the proportionality of a sentence to the offense are determined on a case-by-case basis because no one factor will be dispositive in a given case."  *Stanislaw II*, 2013 ME 43, ¶ 30, 65 A.3d 1242 (quotation marks omitted).

[¶34]  We compare the gravity of the offense to the severity of the sentence "by (1) evaluating where that defendant's term of imprisonment fell within the range of incarceration time authorized by the Legislature and (2) considering the facts of a case in conjunction with the commonly accepted goals of punishment."[7]  *Lopez*, 2018 ME 59, ¶ 16, 184 A.3d 880 (citations and quotation marks omitted).  If this comparison "results in an inference of gross

---

[6]  Because Murray does not argue that his sentence offends prevailing notions of decency, we evaluate only whether the sentence is proportionate.  *See Lopez*, 2018 ME 59, ¶ 15 n.3, 184 A.3d 880 (explaining that because the defendant challenged only the proportionality of the sentence and did not argue that the sentence offended prevailing notions of decency, review of the claim was limited to the issue of proportionality).

[7]  Title 17-A M.R.S. § 1501 (2026) lists the goals of sentencing, including to prevent crime, encourage individualization of sentences, minimize correctional experience, and permit sentences based on certain factors related to the crime committed, among others.

disproportionality we then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction." *Id.* ¶ 17. (quotation marks omitted).

[¶35] We conclude that the sentence is proportionate to Murray's crimes. In examining the gravity of the offense, we note that Murray had unlawful and repeated sexual contact with two extremely young children, made them participate in his repugnant fetishes, normalized his aberrant practices in their minds, and violated the trust not only of the victims but also of their family. The ultimate sentence imposed was within the range of incarceration authorized by the Legislature, as Murray received two concurrent five-year sentences on Counts 2 and 3, which are the statutory maximums for a class C crime, and eight years, with all but two years suspended, for Count 1, a Class B crime, where a maximum of 10 years is authorized. *See* 17-A M.R.S. § 1604(1)(B), (C) (2026).

[¶36] Murray's sentence furthers the sentencing goals of preventing crime and minimizing correctional experiences, and considers the factors specifically related to the charged conduct. *See* 17-A M.R.S. § 1501(1), (3), (8)(A) (2026). The extended period of probation acts as a strong deterrent to ensure that Murray does not commit acts like these again once he is released,

the suspension of six years of the ultimate sentence on Count 1 works to minimize correctional experiences, and the overall sentence is reflective of the young age of the victims and the length and perversity of the conduct.

[¶37]  We conclude that this is not the "rare" case leading to an inference of gross disproportionality, and therefore we do not proceed to step two of the proportionality analysis.  *See Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033.  The sentences are tailored to serve the purposes of sentencing, *see* 17-A M.R.S. § 1501, and are not constitutionally disproportionate, Me. Const. art. I, § 9; *see State v. Hansen*, 2020 ME 43, ¶¶ 34-37, 228 A.3d 1082.

The entry is:

Judgment affirmed.

James M. Mason, Esq. (orally), Handelman & Mason LLC, Brunswick, for appellant Joseph Murray

Christopher J. Coleman, Asst. Dist. Atty., and McKenzi Stevens, Asst. Dist. Atty. (orally), Office of the District Attorney, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2023-2900
FOR CLERK REFERENCE ONLY